UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
NEW FALLS CORP.,

     Plaintiff,       **REPORT & RECOMMENDATION**

   -against-         09-CV-4809 (NGG) (RER)

RAMNARINE J. LALL,

     Defendant.
----------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

   Plaintiff New Falls Corporation ("New Falls" or "Plaintiff") brings this action against defendant Ramnarine J. Lall ("Lall"), alleging that Lall failed to repay two home equity loan agreements pursuant to their terms. Due to Lall's on-the-record admission of liability, New Falls moved for summary judgment on April 19, 2010. (Docket Entry No. 24.) On May 18, 2010, the Honorable Nicholas G. Garaufis granted the motion and referred the matter to me for a Report and Recommendation on the issue of damages, attorneys' fees, and expenses. (Docket Entry No. 25.)

   For the reasons explained below, I respectfully recommend that judgment be entered against Lall in the amount of $149,472.39, a total of $109,903.20 in damages, $29,580.74 in interest, $9,988.45 in attorneys' fees and costs, plus interest of $29.76 per diem from 6/10/2010 through the date of entry of final judgment.

## BACKGROUND

   Plaintiff New Falls is the assignee of two home equity loans extended to Lall by Fifth Third Bank (Central Florida) ("FT Bank"). On December 13, 2005, Lall entered into an $85,000.00 Equity Flexline Credit Agreement ("2005 Credit Agreement") with FT Bank that

required him to pay interest on a monthly basis on the outstanding principal balance at a variable rate equal to 0.5% above Prime. (Declaration of Gregory Cadle ("Cadle Decl. I"), April 13, 2010, Exh. A ¶ 8.) On January 31, 2006, Lall entered into a $50,000.00 Equity Flexline Credit Agreement ("2006 Credit Agreement") with FT Bank that also required him to pay interest on a monthly basis on the outstanding principal balance, this time at a variable rate equal to 1.00% above Prime. (Cadle Decl. I, Exh. D ¶ 8.)

According to the terms of both Credit Agreements, failure to make any required payments would result in default, triggering an increase of the applicable interest rate by 6.00% per year. (Cadle Decl. I, Exh. A ¶ 20(b), B ¶ 20(b).) Lall did not make the required interest payments due on December 1, 2007 for either loan and has since made no further payments. (Answer ¶¶ 9, 11.) FT Bank assigned both Credit Agreements to New Falls effective December 7, 2007, and New Falls informed Lall that all future payments should be sent to New Falls. (Cadle Decl. I, Exh. C, F.) Lall has not made any payments to New Falls on either loan. (Cadle Decl. I ¶¶ 7, 12.)

## DISCUSSION

In his Memorandum and Order, Judge Garaufis granted New Falls's motion for summary judgment as to Defendant's liability for breach of contract because Defendant admitted to defaulting under the terms of the Credit Agreements. (Mem. and Order, dated May 18, 2010.) Therefore, this Report and Recommendation is limited to determining the amount of damages owed to Plaintiff. On May 24, 2010, I directed the parties to file affidavits and other documentary evidence in support of their respective positions.

In support of its motion, New Falls submitted the declaration of Account Officer Gregory Cadle, and its attorney Jack Hassid. (Docket Entry Nos. 27, 28.) These affidavits were submitted

2

to supplement the declarations filed in support of Plaintiff's Motion for Summary Judgment. (Docket Entry No. 24.) Lall has not submitted any papers in opposition. (*See* Docket Entry No. 30.) Accordingly, a hearing is not warranted.

### A. Principal & Accrued Interest

In a breach of contract action where a defendant has defaulted on an express contract, a plaintiff may seek the unpaid principal and the interest accruing under the contract terms to the date of final judgment. *E.g.*, *Bank First v. Guillem*, No. 6:09-cv-152-Orl-31KRS, 2009 WL 1930190 (M.D. Fla. June 30, 2009) (applying Florida law).[1] Plaintiff seeks $101,227.42 in principal and interest on the 2005 Credit Agreement and $38,253.52 in principal and interest on the 2006 Credit Agreement.

Letters from New Falls to Lall, submitted by Plaintiff and uncontested by Lall, show that the principal amounts of the loans were $79,976.64 and $29,926.56 for the 2005 and 2006 Credit Agreements, respectively, when New Falls acquired them. (Cadle Decl. I, Exh. C, F.) Plaintiff provided detailed calculations of the amount of interest owed on each principal amount from the date of default (12/7/2007). (*See* Declaration of Gregory Cadle ("Cadle Decl. II"), June 10, 2010, Exh. K, L.) Pursuant to the Credit Agreements, Plaintiff used the Wall Street Journal ("WSJ")

---

[1] As explained in Judge Garaufis's Order, Florida law governs the substantive provisions of the Credit Agreements. (Docket Entry No. 25.) Pre-judgment interest is considered a substantive issue under New York law and so the Florida choice of law provision governs the calculation of interest. *RLS Associates, LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 219 (S.D.N.Y. 2006) (citing *Entron, Inc. v. Affiliated FM Ins. Co.*, 578 F. Supp. 334, 335 (E.D.N.Y. 1984) (treating prejudgment interest as substantive in contract case applying New York choice of law principles)). Moreover, the Credit Agreements specify that "the amounts contracted for, including the finance charge" are governed by Florida law. (Cadle Decl. I, Exh. A ¶ 28, Exh. D ¶ 28.) In any event, either forum would honor the parties' intentions by calculating damages and interest according to the express provisions of the agreement since it violates no law or public policy to enforce as written.

Prime Rate, plus .5% (2005 Credit Agreement) or 1.00% (2006 Credit Agreement), plus the default interest rate of 6.00%, to determine the variable interest rates. According to Plaintiff's calculations, the total amount of interest due on the 2005 Credit Agreement was $21,250.78 as of 6/9/2010, (Cadle Decl. II, Exh. K), and the total amount of interest due on the 2006 Credit Agreement was $8,326.96. (Cadle Decl. II, Exh. L.) I have reviewed and verified the interest calculations of both Credit Agreements and find them to be accurate.[2]

Therefore, I respectfully recommend $101,227.42 ($79,976.64 in principal, $21,250.78 in interest) be awarded for the breach of the 2005 Credit Agreement and $38,253.52 ($29,926.56 in principal, $8,326.96 in interest) be awarded for the breach of the 2006 Credit Agreement. I also recommend that additional interest be awarded at an annual rate of 9.75%[3] on the principal amount of $79,976.64 ($21.36 per diem) and at an annual rate of 10.25%[4] on the principal amount

---

[2] Cadle's calculations are accurate barring one typographical error in the date of rate changes. On the ledger tables showing the calculation of rates for each applicable time period, the most recent date of rate change is listed as 12/06/2008; on the ledger tables showing the calculation of interest using those rates, the date of calculation is listed as 12/17/2008, which suggests a date of rate change on 12/16/2008 since rate changes were applied the day after a change to the WSJ Prime Rate. (*See* Cadle Decl. II, Exh. K, L.) Despite the apparent inconsistency, the tables showing the calculation of interest correspond to the WSJ Prime Rates, (Cadle Decl. II, Exh. J), and the calculations of interest are in fact correct.

[3] Since December 16, 2008, the WSJ Prime Rate has been 3.25%. (Cadle Decl. II, Exh. J.) Per the 2005 Credit Agreement, the current interest rate is calculated by adding .5% to the WSJ Prime Rate and 6% for the default rate increase. (Cadle Decl. I, Exh. A ¶¶ 8, 20.) Therefore, the current applicable interest rate is 9.75% or $21.36 per diem.

[4] Since December 16, 2008, the WSJ Prime Rate has been 3.25%. (Cadle Decl. II, Exh. J.) Per the 2006 Credit Agreement, the current interest rate is calculated by adding 1% to the WSJ Prime Rate and 6% for the default rate increase. (Cadle Decl. I, Exh. D ¶¶ 8, 20.) Therefore, the current applicable interest rate is 10.25% or $8.40 per diem.

of $29,926.56 ($8.40 per diem), each calculated from 6/10/2010 through the date of entry of final judgment.

B.    **Attorneys' Fees & Costs**

Plaintiff also seeks attorneys' fees pursuant to provisions in both Credit Agreements, which require the borrower to reimburse Plaintiff for expenses and fees incurred to collect the debt. (Cadle Decl. I, Exh. A ¶ 22, D ¶ 22.) In considering the appropriate damage award, the Court has broad discretion to set reasonable attorneys' fees. *See, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117–18 (2d Cir. 2008) (determining a "presumptively reasonable" fee by multiplying a reasonable hourly fee by a reasonable number of expended hours). The party requesting attorneys' fees must show the reasonableness and necessity of rates charged and hours spent. *See Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11 (1984) (requiring fee applicant to produce evidence in addition to the attorneys' own affidavits that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The fee applicant must also provide contemporaneous time records that show the date, the hours expended, and the nature of the work done by each attorney. *See, e.g., Aiello v. Town of Brookhaven*, No. 94-cv-2622, 2005 WL 1397202, at *2 (E.D.N.Y. June 13, 2005) (permitting records that do not describe "in great detail how billable time was spent" as long as the records "identify the general subject matter of time expenditures") (citation omitted).

Plaintiff requests $9,197.90 in attorneys' fees for 49.41 hours of work Hassid spent on this matter, and $790.55 in expenses. (Declaration of Jack Hassid ("Hassid Decl."), June 11, 2010, ¶

13.) In support of its request, Plaintiff submits Hassid's invoices, which detail the dates and nature of the 49.41 hours of work he performed on this matter, as well as resulting expenses. (Hassid Decl., Exh. M.) Hassid bills at $190 per hour. (Hassid Decl. ¶ 12.) After reviewing Hassid's invoices to confirm that the calculations are correct and considering the extra time spent on this matter in connection with Defendant's initial default and subsequent dispute over service of process, I respectfully recommend that Plaintiff be awarded $9,197.90 in attorneys' fees, as requested. I further recommend that Plaintiff be awarded $790.55 in expenses incurred, which includes court costs, fees for service of process and other reasonable costs incurred in the course of litigation, for a total of $9,988.45 in attorneys' fees and costs.

## **CONCLUSION**

For the reasons explained above, I respectfully recommend that New Falls be awarded $109,903.20 in damages, $29,580.74 in interest, $9,988.45 in attorneys' fees and costs ($149,472.39 in total), plus $29.76 per diem from 6/10/2010 through the date of entry of final judgment.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Nicholas G. Garaufis within fourteen days of receipt hereof. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6, 72; *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

New Falls is hereby directed to serve a copy of this Report and Recommendation upon Lall and file proof of service with the Clerk of the Court no later than 9/17/10.

**Dated: September 14, 2010**
 **Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**